758 F.2d 879
 55 A.F.T.R.2d 85-1337, 85-1 USTC P 9317
 UNITED STATES of America
v.
GRAHAM, Robert B.
Appeal of Robert B. GRAHAM Sr.
UNITED STATES of America
v.
GREENSPUN, Milton, Appellant.
UNITED STATES of America
v.
KIRBY, William P.
Appeal of William P. KIRBY.
UNITED STATES of America
v.
BALCHAITIS, Joseph, Appellant.
 Nos. 83-1797, 83-1798, 83-1805, 83-1810, 83-1836, 83-1837,
83-1932 to 83-1935.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 13, 1984.
Decided March 20, 1985.
Rehearing and Rehearing In Banc Denied
April 22, 1985 in Nos. 83-1798 & 83-1810,
83-1805 & 83-1836 and
83-1837 & 83-1935.
 
 Robert B. Graham, Sr., Holland, Pa., pro se.
 Ronald Brent Boutwell (argued), Las Vegas, Nev., for appellant, Graham.
 Edward S.G. Dennis, Jr., U.S. Atty., Chief of Appeals, Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Edward F. Borden, Jr. (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee.
 David E. Shapiro (argued), Philadelphia, Pa., for appellant, Greenspun.
 Stephen P. Patrizio (argued), Dranoff & Patrizio, Philadelphia, Pa., for appellant, Kirby.
 Joseph Balchaitis, pro se.
 Bonnie B. Leadbetter (argued), Leadbetter & Becker, Philadelphia, Pa., for appellant, Balchaitis.
 Before GARTH and HIGGINBOTHAM, Circuit Judges, and McCUNE, District Judge.*OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 
 1
 Robert B. Graham was convicted of conspiracy to defraud the United States, 18 U.S.C. Sec. 371, and aiding the filing of false tax returns. 26 U.S.C. Sec. 7206(2). William Kirby was convicted of conspiracy to defraud. Joseph Balchaitis was convicted of conspiracy to defraud, filing a false W-4 exemption certificate, and failure to file income tax returns. Milton Greenspun was convicted of conspiracy to defraud the United States. Each appealed.
 
 
 2
 All the appellants were involved in a group called the Committee for Constitutional Taxation. This group conducted a series of public seminars directed at educating citizens about tax protest, the constitutional aspects of income tax reporting, and the methods by which they could avoid paying taxes and thwart IRS investigations. At these seminars, attendees were instructed about how to file "fifth amendment tax returns" which disclosed little or no information about the taxpayer's income, but which contained entries stating "OBJECT--FIFTH AMENDMENT." They were also advised to set up foreign bank accounts and they were instructed to claim loss of memory if called by a grand jury.
 
 
 3
 The defendants challenge their convictions on a great number of grounds, all of which we find to be without merit.[1] Only a few of the alleged errors warrant discussion. Perhaps the most troubling challenge concerns a supplemental charge given to the jury after it had indicated that it was deadlocked. However, finding no reversible error preserved for review, we affirm all the judgments of conviction.
 
 I.
 
 4
 The defendants' trial started on Wednesday, August 31, 1983. On Monday, September 12, while testimony was still being heard and two days before deliberations began, one juror sent the judge the following note:
 
 
 5
 Your Honor,
 
 
 6
 I would like to request of the court on behalf of the Jewish juror's [sic] and possible others, that we be dismissed on Friday at 4:00 P.M. This is the eve of Yom Kippur which starts the beginning of a 24 hour fast. We must be home to prepare and eat dinner before 6:00 P.M. in order to begin the holiday tradition of synagogue and our fast.
 
 
 7
 Thank you very much for your consideration.
 
 Susan Ball
 Seat # 12
 
 8
 Ct. Ex. # 3. The district court judge never directly responded to the jury with respect to this request. No member of the jury ever raised the issue again.
 
 
 9
 After hearing nine days of testimony, the jury retired at 3:44 pm on Wednesday, September 14, 1983 to deliberate on the thirty-six counts of the indictment. The jury was sent home at 5:27 that evening, then resumed its deliberations at 9:30 am the following morning, Thursday, September 15. The jury deliberated all day Thursday and was sent home at 10:05 pm. The jury resumed its deliberations at 9:00 am on Friday, September 16. The evening of Friday, September 16, 1983 was the commencement of the Jewish High Holy Day of Yom Kippur.
 
 
 10
 On the morning of Friday, September 16, at 11:00 am, the jury sent the following note to the district court judge:
 
 
 11
 Your Honor,
 
 
 12
 After approximately 17 hours of deliberation we have reached a verdict against only one of the defendants on two counts.
 
 
 13
 After careful and intensive debate, there is no doubt in any of our minds that we can not reach a unaminous [sic] verdict on any of the other charges.
 
 
 14
 Therefore further deliberations would be fruitless.
 
 
 15
 David RacherCt. Ex. # 8. The judge read this message to counsel and indicated that he would give the jury a supplemental charge.
 
 
 16
 At this point, counsel for Kirby, concerned that the jury might consider four o'clock that afternoon as a deadline for its verdict, requested that the jury be informed in the court's supplemental charge that they need not reach a verdict by four o'clock to be excused for the Jewish holiday. The judge assented to this request, stating, "All right I'll say something to that [effect]." However, in instructing the jury the judge failed to address the specific subject of a four o'clock departure time. The judge did tell the jury that "There are no time deadlines within which you must reach your verdict." Appendix at 239a. Thus, the instruction given to the jury did not directly respond to the juror's request which had been made four days earlier, but it did unequivocally state that no time limitations restricted the jury's deliberations.
 
 
 17
 The charge did include language which was aimed at obtaining a jury verdict by breaking the jury's deadlock:
 
 
 18
 If much the greater number of you are for a conviction, each descenting [sic] juror ought to consider whether a doubt in his or her mind is a reasonable one, since it makes no effective impression upon the minds of so many equally honest, equally conscientious fellow jurors who bear the same responsibility, serve under the same oath, and have heard the same evidence with, we may assume, the same attention, and an equal desire to arrive at the truth.
 
 
 19
 On the other hand, if a majority or even a lesser number of you are for acquittal, other jurors ought to seriously ask themselves again, and most thoughtfully, whether they do not have reason to doubt the correctness of a judgment which is not incurred [sic] in by so many of their fellow jurors, and whether they should not distrust the weight and sufficiency of evidence which fails to convince the minds of several of their fellow jurors beyond a reasonable doubt.
 
 
 20
 Immediately after the supplemental charge had been read to the jury and the jury had retired, counsel for Kirby again asked that the jury be informed that there was no four o'clock deadline. The district court judge replied, "Well, I don't know how I could make it any clearer." Appendix at 240a.
 
 
 21
 Counsel for Graham at this stage requested a further charge with respect to first amendment protection for some of Graham's activities. Counsel for Greenspun objected to a portion of the supplemental charge which discussed the length and expense of the trial. At no time before the announcement of the verdicts by the jury did any defendant object to the portion of the charge that directed a minority number of the jurors to reconsider their positions in light of the positions taken by the majority number of the jurors.
 
 
 22
 At 3:20 pm that Friday (September 16, 1983), the jury announced that it had reached verdicts on a total of eight of the thirty-six counts. The district court judge accepted this verdict. No timely request to poll the jury was made.[2] The judge dismissed without prejudice the counts on which the jury was unable to reach a verdict and then discharged the jury.
 
 II.
 
 23
 Under Federal Rule of Criminal Procedure 30,
 
 
 24
 No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.
 
 
 25
 This Court in a recent in banc opinion reconfirmed that it will not consider on appeal, objections that were not timely raised before the trial court. United States v. Gibbs, 739 F.2d 838 (3d Cir.1984) (in banc ), cert. denied, --- U.S. ----, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985). The bar against review of objections that have not been timely made is especially important where, as here, a timely objection would have allowed the trial judge to correct his error and obviate the need for a new trial.
 
 
 26
 In Gibbs, we declined to review a defendant's sixth amendment confrontation clause claim that was not timely asserted before the district court. In Gibbs, the defendant challenged the admission of testimony of an alleged co-conspirator who had not been proved to be unavailable. No constitutional objection to this testimony was made until after both parties rested. We noted in Gibbs that had the defendant made a timely sixth amendment objection, the sixth amendment defect could have been cured by calling the declarant or by proof of the unavailability of the declarant of the challenged testimony. 739 F.2d at 849.
 
 
 27
 Similarly, had any defendant here timely objected to the charge which required the jurors in the minority to reconsider their position, the district court judge could have given a corrective instruction. Indeed, had any defendant called the court's attention to this Court's opinion in United States v. Fioravanti, 412 F.2d 407 (3d Cir.), cert. denied sub nom. Panaccione v. United States, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969), there can be no question but that the district court judge would have revamped his supplementary charge and given the proper Fioravanti instruction. Since no such objection was made, however, the issue has not been preserved for review.
 
 
 28
 We recognize that an "Allen" charge (see Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)), such as the one given in this case, has been discredited in this Circuit. According to United States v. Fioravanti, supra:
 
 
 29
 Hereafter, in this circuit, trial judges are not to give instructions either in the main body of the charge or in the form of a supplement that direct a juror to distrust his own judgment if he finds a large majority of the jurors taking a view different from his. Such an instruction will be deemed error, normally reversible error. Conceivably, in very extraordinary circumstances the error may be found so inconsequential as to avoid the necessity of reversal on appeal. But hereafter this court will not let a verdict stand which may have been influenced in any way by an Allen Charge.
 
 
 30
 412 F.2d at 420.
 
 
 31
 In principle, if not in terms, the charge given in this case cannot be distinguished from the Allen charge which we have rejected. It thus offends our Fioravanti decision and should not have been given. However, as we have previously noted, no objection was ever made prior to the jury's verdict.
 
 
 32
 We recognize that in Government of Virgin Islands v. Hernandez, 476 F.2d 791 (3d Cir.1973) an Allen charge was held to be "plain error." In that case, however, the court did not analyze or discuss the plain error standard nor did it find that manifest injustice would result without review. See United States v. Young, --- U.S. ----, 105 S.Ct. 1038, 84 L.Ed.2d --- (1985). The Supreme Court's latest pronouncement on plain error review reaffirms that the determination of whether "plain error" has occurred and has resulted in a miscarriage of justice, is to be made by the reviewing court on a case-by-case basis, upon review of the entire record. United States v. Young, --- U.S. at ----, 105 S.Ct. at 1046. Our independent review of the entire record reveals that no manifest injustice resulted from the court's instruction. See Namet v. United States, 373 U.S. 179, 190-91, 83 S.Ct. 1151, 1156-57, 10 L.Ed.2d 278 (1962); Trent v. Atlantic City Electric Co., 334 F.2d 847, 859 (3d Cir.1964). Thus, review under the plain error doctrine is unavailable and no new trial will be ordered on this ground.
 
 III.
 
 33
 Nor did reversible error result from the judge's failure to respond to the September 12, 1983 juror's request to be excused by four o'clock the evening of the Jewish holiday of Yom Kippur. We find it significant that at no time after the initial request made on the Monday of September 12, did any juror ever again bring this matter to the attention of the district court judge. Although the jury had been instructed that it could communicate with the court by written message and in fact it had done so to inform the court of its deadlock, no subsequent message or request was ever received by the court from the jury.
 
 
 34
 It is true that counsel for Kirby reminded the court twice of the jury's four o'clock concern--a concern with which the district court judge apparently believed he had dealt.[3] Despite the fact that all defendants would obviously have been affected if the jury's verdict had been coerced, only one of the four defendants relies in his brief on the judge's failure to resolve the four o'clock issue, as grounds for a new trial independent of the Allen charge.[4] That response, as contained in Kirby's brief followed a discussion of the Allen- Fioravanti charge and the entire argument addressing the "four o'clock issue" consists of this paragraph:
 
 
 35
 Finally, the appellant asserts that the jury was not made sufficiently aware that they would not be required to meet through the evening, thereby interfering with the start of the Yom Kippur holiday. It is apparent from the haste in which they reached their verdict that they believed that a time limitation had been placed upon them to conclude deliberation prior to the end of the afternoon. Contrary to the request of defense counsel, N.T. 13.11-12, the Court declined to clarify this ambiguity thereby leaving misapprehension under which the jury operated.
 
 
 36
 Thus, even in the defendants' briefs, the argument of jury coercion, to the extent that it relied on the district court's failure to respond directly to a request made four days earlier by the jury, assumes little significance. Nevertheless, because the issue has been raised in connection with the district court's supplementary charge, a brief examination of the standard relevant to jury deliberation is appropriate.
 
 
 37
 The four o'clock issue we are discussing here is not, as the dissent claims, whether Yom Kippur is a holiday of great religious significance. It obviously is. The relevant standard and issue is whether the trial judge abused his discretion by the manner in which he responded to a juror's request made some four days earlier. This standard and issue are neither addressed, recognized nor applied in the dissent, which is largely devoted to the religious aspects of both the Jewish and Christian holy days. In our review of the record, the district court did not abuse his discretion.
 
 
 38
 "The length of time a jury may be kept together for the purpose of deliberation is a matter within the discretion of the trial judge, and his action in requiring further deliberation after the jury has reported a disagreement does not, without more, constitute coercion." United States v. Grosso, 358 F.2d 154, 159 (3d Cir.1966), rev'd on other grounds, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968): accord, Government of Virgin Islands v. Gereau, 502 F.2d 914, 935 (3d Cir.1974). Thus, the district court's actions in dealing with counsel's suggestion and in sending the jury back for further deliberations in this case do not constitute an improper exercise of discretion, nor can they be held to constitute coersion. The impending holiday of and by itself is an insufficient additional factor to render the district court's order for further deliberations coercive.
 
 
 39
 Grosso is instructive on this point. In Grosso, one of the jurors became sufficiently ill to require the assistance of a physician, who diagnosed a nervous disorder. Nevertheless, the trial judge refused to order a mistrial, and deliberations continued as soon as the ill juror was well enough. Despite a note from the jury that indicated it was deadlocked, the district court judge ordered the jury to continue deliberations. According to the Grosso court, the illness of a juror might be considered as an unduly coercive circumstance, but only if evidence indicated that the jury's verdict was in fact influenced by that circumstance. The Grosso court found no such evidence.
 
 
 40
 Similarly, here, there is no evidence that the jurors were coerced to agree upon a verdict by the impending onset of the Yom Kippur holiday. Indeed, it is significant that of the thirty-six counts on which the jury was deliberating, twenty-eight of the counts remained unresolved.
 
 
 41
 While some courts have found the length of time the jury was made to deliberate, to be coercive, see United States v. Chaney, 559 F.2d 1094 (7th Cir.1977); United States v. Flannery, 451 F.2d 880 (1st Cir.1971), these cases have involved affirmative coercive conduct of the district court, such as reminding the jury that the weekend was approaching (Flannery ), or creating the impression that the jury would be locked up all night (Chaney ). No such affirmative coercive conduct occurred in this case and, absent evidence that the jury was influenced by a prescribed deadline or the approaching holiday, the court's mere failure to respond to a juror's request cannot be deemed coercive.
 
 IV.
 
 42
 In addition to the general claims asserted by all four defendants, Graham challenges the sufficiency of the evidence to sustain his conviction on Counts 22 and 23 of the indictment. These counts charged Graham with aiding and abetting the filing of a false tax return. In our review of the sufficiency of the evidence after a jury verdict in favor of the government, "[i]t is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it." Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).
 
 
 43
 Taking the view most favorable to the government, we find sufficient evidence to support Graham's conviction for aiding and abetting the filing of a false return. To establish aiding and abetting the filing of a false tax return "there must exist some affirmative participation which at least encourages the perpetrator." United States v. Buttorff, 572 F.2d 619, 623 (8th Cir.1978) (quoting United States v. Thomas, 469 F.2d 145, 147 (8th Cir.1972), cert. denied, 410 U.S. 957, 93 S.Ct. 1430, 35 L.Ed.2d 690 (1973)).
 
 
 44
 David Kosco testified that he gave Graham $5,000 to open up a Swiss bank account in Kosco's name through Graham's investment firm. According to Kosco, "[A]t the time I was investing the money, [Graham] said, you know, being it was a foreign government, and the U.S. had no jurisdiction over it, you know not to pay the taxes," Appendix at 110a. Kosco further testified that he did not report the interest earned in this account on his tax returns for the years 1978 or 1979. On cross examination, Kosco testified that these returns were prepared by an accountant, and that Kosco did not inform the accountant that he had received this interest.
 
 
 45
 Viewing this testimony in the light most favorable to the government, there is clearly sufficient evidence to allow a rational trier of fact to conclude that Graham, by setting up the account and telling Kosco not to report the interest, engaged in "some affirmative participation which at least encourage[d] the perpetrator [Kosco]." The intervention of time from the dealings between Kosco and Graham to the actual filing of the return does not negate this aid; nor does the fact that an accountant, not a party to the Swiss bank transaction, completed the return.[5]
 
 V.
 
 46
 None of the defendants' other contentions (see Appendix A to this opinion) merit discussion. Upon review of the record we are satisfied that sufficient evidence of conduct not protected by the first amendment was submitted to the jury to sustain the conspiracy convictions. See United States v. Buttorff, supra. We are also satisfied that there was sufficient evidence to convict the four defendants and that the district judge did not err in excluding tape recordings of the defendant's meetings. The defendants' challenges to the constitutionality and applicability of the income tax and to the jurisdiction of the district court do not deserve discussion.
 
 
 47
 For the foregoing reasons, the judgments of the district court will be affirmed.
 
 APPENDIX A
 
 48
 Graham challenges his conviction on the grounds (1) that the district court erred in denying his motion for acquittal for insufficiency of evidence to support his conviction under 26 U.S.C. Sec. 7602(2), (2) that the government failed to present sufficient evidence to sustain a conspiracy conviction under 18 U.S.C. Sec. 371, (3) that the district court erred in its supplemental charge to the jury, (4) that the district court judge erred in instructing the jury that Graham had improperly invoked his fifth amendment privilege against self-incrimination on his tax return, (5) that the court erred by failing to compel admission by the government of the authenticity of a certain letter sent by the IRS to Victor G. Petersen, and (6) that the district court erred in admitting co-conspirators' out-of-court statements prior to prima facie proof of the existence of a single theory conspiracy. The jury reached no verdict on the count covered by the instruction on the privilege against self-incrimination.
 
 
 49
 Kirby contends (1) that evidence of conduct unprotected by the first amendment presented was insufficient to sustain his conviction, (2) that the court erred in refusing to admit on defendants' behalf government tape recordings of the group's meetings, and (3) that the court's supplemental charge to the jury was error. Kirby further adopts all the arguments advanced by his co-defendants.
 
 
 50
 Balchaitis contends (1) that the government failed to present sufficient evidence to sustain the conviction for filing a false withholding certificate, (2) that the district court erred in refusing to admit on defendants' behalf government tape recordings of the group's meetings, (3) that evidence was insufficient to sustain the conviction for conspiracy to defraud since the activities were protected by the first amendment, (4) that the court's supplemental charge to the jury was error, (5) that the district court lacked subject matter jurisdiction to hear the case, (6) that Balchaitis was denied his right to counsel of choice, (7) that Balchaitis was, as a matter of law, not required to file a W-4 form, (8) that Balchaitis was not required to file a tax return in 1980, and (9) that the government failed to show that Balchaitis had acted wilfully. Balchaitis further adopts all relevant arguments of his co-defendants. As part of the argument in his pro se brief that the district court lacked subject matter jurisdiction, Balchaitis contends that the income tax may not constitutionally be applied to wages paid to individuals.
 
 
 51
 Greenspun contends (1) that insufficient evidence of conduct unprotected by the first amendment was presented to sustain his conspiracy conviction, (2) that insufficient evidence of any kind was presented to sustain his conspiracy conviction, (3) that the district court erred in refusing to admit on defendants' behalf government tape recordings of the group's meetings, and (4) that the supplemental charge to the jury was error. Greenspun further adopts the arguments of his co-defendants.
 
 
 52
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge, dissenting.
 
 
 53
 I dissent from the majority's conclusion that the "court's mere failure to respond to a juror's request [that the jury be timely excused to observe Yom Kippur] cannot be deemed coercive." At 885. Yom Kippur--the Day of Atonement--is the holiest day on the Jewish calendar. It is not a day of joyous celebration, but rather a day of fasting and prayer.[1] Recognizing that for Jews Yom Kippur is at least as sacred as Christmas is to Christians, I believe that the failure of the trial judge to advise jurors that they would be released by 4:00 p.m. on the evening that Yom Kippur was to begin, when viewed in the context of the jury's deliberations, was so coercive that it denied the defendants a fair trial. I would hold similarly if, in response to a request to be excused for Christmas, a judge failed to advise jurors that they would not have to deliberate on Christmas day. Yom Kippur should receive no less respect in the federal courts than does Christmas, and it is inconceivable to me that any judge would permit a jury to doubt whether they would have to deliberate on Christmas Day.
 
 
 54
 In the most unequivocal request possible, five days before Yom Kippur, the jury asked the trial judge through the message of one juror:
 
 
 55
 Your Honor,
 
 
 56
 I would like to request of the court on behalf of the Jewish juror's [sic] and possible others, that we be dismissed on Friday at 4:00 P.M. This is the eve of Yom Kippur which starts the beginning of a 24 hour fast. We must be home to prepare and eat dinner before 6:00 P.M. in order to begin the holiday tradition of synagogue and our fast.
 
 
 57
 Thank you very much for your consideration.
 
 
 58
 Despite this timely message, the jury was never informed that they would be dismissed on Friday at 4:00 p.m. By Friday morning at 11:00 a.m. they had been deliberating for more than two full days and for more than seventeen hours, and they sent the following note to the district judge:
 
 
 59
 Your Honor,
 
 
 60
 After approximately 17 hours of deliberation we have reached a verdict against only one of the defendants on two counts.
 
 
 61
 After careful and intensive debate, there is no doubt in any of our minds that we can not reach a unaminous [sic] verdict on any of the other charges.
 
 
 62
 Therefore further deliberations would be fruitless.
 
 
 63
 The judge read this message to counsel and indicated that he would give the jury a supplemental charge. At this point, counsel for defendant Kirby, concerned that the jury might consider four o'clock that afternoon as a deadline for its verdict, pointedly reminded the judge of the juror's prior note regarding Yom Kippur:
 
 
 64
 MR. PATRIZIO: Your honor, I would have a request that this jury be told that 4 o'clock was one of the juror's request to be adjourned by today. They might be operating under the assumption that they have to make a decision by 4 o'clock today, and I would request that they be told that that is not a deadline, that they'll come back on another day to resume their deliberations.
 
 
 65
 With his customary sensitivity, the trial judge recognized the reasonableness of counsel's request that the jury be instructed that they did not "have to make a decision by 4 o'clock today ... that that is not a deadline," and that they could "come back on another day to resume their deliberations." The trial judge promised: "All right I'll say something to that." Instead of advising the jury that they could depart on Friday at 4:00 p.m., and come back on another day to resume deliberations, the trial judge gave a supplemental instruction which is known among trial judges as the "dynamite"--or Allen --charge, United States v. Flannery, 451 F.2d 880, 883 (1st Cir.1971), and which is violative of this court's express admonition in United States v. Fioravanti, 412 F.2d 407 (3d Cir.), cert. denied, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969).[2]
 
 
 66
 To compound the matter, when giving the forbidden Allen charge[3] as a supplemental instruction, the trial judge told the jury:
 
 
 67
 You may conduct your deliberations as you choose, but I suggest that you now carefully reexamine and reconsider all the evidence in the case, bearing upon the questions before you.
 
 
 68
 You may be as leisurely in your deliberations as the occasion may require, and you may take all the time which you feel is necessary. There are no time deadlines within which you must reach a verdict.
 
 
 69
 You may now retire and continue your deliberations in such manner as shall be determined by your good and consciencious [sic] judgment as reasonable men and women.
 
 
 70
 (Emphasis added.)
 
 
 71
 Unfortunately, after dealing with the other aspects of his supplemental charge, the trial judge, through inadvertence, did not assure the jury that they would be dismissed for Yom Kippur. However, the fairness of the request was so firmly implanted in his mind that the trial judge had thought that he had actually given it. The foregoing is the only explanation of the colloquy between the trial judge and counsel after the supplemental instruction:
 
 
 72
 MR. PATRIZIO: Judge, I'm still not sure whether or not this jury understands that they are going to be permitted to leave at 4 o'clock. I don't think they've ever been told that.
 
 
 73
 THE COURT: Well, I don't know how I could make it any clearer.
 
 
 74
 The court's supplemental instruction that "[t]here are no time deadlines within which you must reach a verdict" could not be construed as addressing the jury's concern. Surely the jury understood from that remark that there were no time deadlines imposed upon them by the court. In that sense, they were aware that they were probably free to deliberate until 10:30 p.m., as they had done the night before, and on the following day. Yet for the Jewish members of the jury and for those jurors who, though they were not Jewish, recognized and desired to accommodate the religious practices of others, such an instruction failed to address their expressed concern.
 
 
 75
 While the majority finds it significant that after the initial request made on Monday, September 12, no subsequent request was ever received, I find this unimportant. Once expressed, the district court should have addressed the concern. The jury could not reasonably infer from the lack of the court's response that the Monday request would be granted. What I do find significant is that the jury returned with their verdict at 3:20 p.m., just forty minutes before the time the court had been advised some jurors would have to leave in order to observe Yom Kippur, and that the jury was actually discharged at 3:45 p.m.
 
 
 76
 This case is without precedent as to its factual context, but the teachings of several cases are quite relevant. In the clearest language possible, the Supreme Court has recognized that "the principle that jurors may not be coerced into surrendering views conscientiously held is so clear as to require no elaboration." Jenkins v. United States, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965). And the Court has noted that in determining whether there has been coercion of the jury, we must look at "all the circumstances." Id., 380 U.S. at 446, 85 S.Ct. at 1060. More than fifteen years ago in a seminal opinion written by Judge Aldisert, we noted:
 
 
 77
 So long as the unanimous verdict is required in criminal cases, there will always be three possible decisions of the jury: (1) not guilty of any charge; (2) guilty of one or more counts of the indictment; and (3) no verdict because of a lack of unanimity. The possibility of a hung jury is as much a part of our jury unanimity schema as are verdicts of guilty or not guilty. And although dictates of sound judicial administration tend to encourage the rendition of verdicts rather than suffer the experience of hung juries, nevertheless, it is a cardinal principle of the law that a trial judge may not coerce a jury to the extent of demanding that they return a verdict.
 
 
 78
 Fioravanti, 412 F.2d at 416.
 
 
 79
 In United States v. Flannery, 451 F.2d 880 (1st Cir.1971) the First Circuit noted that it was reversible error where "the court erred in reminding the jury that it was Friday afternoon.... The implicit suggestion, although doubtless unintended, was that it was more important to be quick than to be thoughtful." 451 F.2d at 883. In Brasfield v. United States, 272 U.S. 448, 450, 47 S.Ct. 135, 136, 71 L.Ed. 345 (1926), more than a half century ago, Justice Stone noted that the coercive effect of a judge's remarks "will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations ...." He warned against making remarks where "in general [the] tendency is coercive." He stressed that some inquiries "can rarely be resorted to without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded." Id., 272 U.S. at 450, 47 S.Ct. at 136.
 
 
 80
 In this case, there was injected a situation or improper influence which had an inherent tendency to be coercive to some members of the jury. The failure to advise the jury that they would be released from jury service in time for Yom Kippur certainly tended to be coercive. Jurors should not have to consider, in addition to the "evidence and the law as expounded in a proper charge," whether they will have to be in court rather than synagogue on their holiest day of the year.
 
 
 81
 For these reasons, I respectfully dissent.
 
 
 
 *
 Honorable Barron P. McCune, United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 The various grounds upon which the defendants have challenged their convictions are set forth in Appendix A attached to this opinion
 
 
 [2]
 Counsel did request a poll of the jury after the verdict was recorded. Such a request is untimely. See Fed.R.Crim.P. 31(d)
 
 
 [3]
 As recited in an earlier part of this opinion, when Kirby's counsel reminded the court that a jury was concerned about the Jewish holiday and desired a four o'clock departure on Friday, September 16, the Court told the jury "There are no time deadlines within which you must reach your verdict." When asked again by Kirby's counsel to address that subject and to inform the jury that there was no four o'clock deadline, the court replied, "Well, I don't know how I could make it any clearer." Appendix at 239a-240a
 
 
 [4]
 Although each defendant incorporated arguments made by his co-defendants in briefs filed with this court, the only brief specifically to rely on the four o'clock issue independently of the Allen charge was Kirby's. Kirby did not even list this argument in his statement of issues presented
 
 
 [5]
 Graham also challenges the materiality of the omission on Kosco's return, as the interest unreported for both years combined amounted to but $250. Graham failed to preserve this issue for appeal, as his motion for acquittal relied only on the claimed insufficiency of the nexus between Graham's conduct and the false tax return. See United States v. Gibbs, 739 F.2d 838 (3d Cir.1984) (issue not preserved unless raised at earliest possible time), cert. denied, --- U.S. ----, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985); United States v. Bonacorsa, 528 F.2d 1218 (2d Cir.), cert. denied, 426 U.S. 935, 96 S.Ct. 2647, 49 L.Ed.2d 386 (1976) (objection to whole count of indictment doesn't preserve objection to particular specifications). In any event, it is established that a misstatement on a return is material if, as here, it results in an incorrect computation of the tax. United States v. Warden, 545 F.2d 32 (7th Cir.1976)
 
 
 [1]
 On the Day of Atonement the Jew stands naked and defenseless before God. All his wrongdoings testify against him, and his sole recourse is to throw himself, with prayers and sincere repentance, on the mercy of God. On this day alone Jews kneel and prostrate themselves in synagogue, and the liturgy recalls the atonement ritual in the ancient temple .... Something of the awesome character of this day has survived right up to the present
 N. de Lange, Atlas of the Jewish World 97 (1984).
 
 
 [2]
 The issue as to whether there was a "manifest injustice" by the giving of the discredited Allen charge is a close one and it may rise to plain error. However, I need not reach that issue in view of the fact that I believe that all of the defendants are entitled to a new trial for the reasons noted. See Government of the Virgin Islands v. Hernandez, 476 F.2d 791 (3d Cir.1973)
 
 
 [3]
 For the history of the Allen charge, see Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) and United States v. Fioravanti, 412 F.2d at 415-16