NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-2221
_____

UNITED STATES OF AMERICA

v.

REGINALD HARRIS,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 2-14-cr-00244-001)
District Judge: Honorable Mark R. Hornak
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 24, 2019
_____

Before: GREENAWAY, JR., PORTER, and GREENBERG, *Circuit Judges*.

(Opinion Filed: November 21, 2019)

_____

OPINION[*]

_____

GREENAWAY, JR., *Circuit Judge*.

Reginald Harris appeals his sentence for crimes related to a tax fraud scheme he ran out of several Pennsylvania prisons. He contests two offense level enhancements based on loss amount and leadership role, and the denial of a reduction in offense level for acceptance of responsibility. For the reasons set forth below, we will affirm the District Court's judgment of conviction.

## I.    BACKGROUND

While incarcerated, Reginald Harris conspired with fellow inmates Roiann Johnson and Anthony Nalls to prepare fraudulent tax returns on behalf of other inmates. Harris and his co-conspirators sought and used names, social security numbers, and other information from non-incarcerated individuals to artificially maximize tax credits on the returns. They worked with relatives and friends, such as Dennis Naylor and Tyrone Gossett, who provided Harris and his co-conspirators with addresses outside of the prison where the refund checks could be mailed. Naylor and Gossett also forged the signatures

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

of refund recipients in order to deposit the checks into bank accounts they had established for this scheme.

After an investigation, Harris was charged in an indictment in October 2014 with one count of conspiracy to commit bank fraud and mail fraud from September 2009 to December 2012, and one count of conspiracy to defraud the United States for the same time period.

In August 2015, Harris pleaded guilty to both counts, without a plea agreement. The Probation Office prepared a presentence investigation report recommending an offense level based on the total loss amount in the conspiracy, a four-point enhancement for Harris's leadership role, and a three-point reduction for acceptance of responsibility. The Government objected to the reduction for acceptance of responsibility, arguing that Harris continued to commit crimes after pleading guilty. Harris entered an objection to the Probation Office's calculation of the loss amount and the leadership role attributed to him.

At the District Court's initial hearing on the disputed sentencing factors, the Government presented testimony that the actual loss amount of the conspiracy in the time period charged totaled $248,170.03, but that the intended loss was over $250,000. After the hearing, the Government filed a Supplemental Sentencing Memorandum alleging that Harris had engaged in additional criminal activity related to the tax fraud scheme after his change of plea, resulting in additional intended loss. The District Court held two

3

additional hearings on the disputed sentencing factors in February 2017 and October 2017, ultimately concluding: (1) the loss amount enhancement was appropriate because the loss amount attributable to Harris was in excess of $250,000; (2) Harris was the leader of the criminal enterprise; and (3) Harris had not sufficiently accepted responsibility to qualify for a reduction in offense level. It determined Harris's Guidelines range to be 92–115 months and entered a sentence of 96 months' imprisonment. The District Court also imposed a supervised release term of five years and three years on the two counts, respectively, to run concurrently with the supervised release term for his ongoing sentence.

Harris filed a timely appeal.

## II.    JURISDICTION & STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Since Harris's three grounds on appeal challenge the District Court's factual findings, this Court will review for clear error. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (review for factual findings relevant to the Guidelines is for clear error). A factual conclusion is clearly erroneous when, upon review, there is a "definite and firm conviction that a mistake has been made." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993) (citations omitted).

## III.    ANALYSIS

4

**A. Loss Amount**

Harris contends the District Court erred in including losses that resulted from the actions of his co-conspirators as attributable to him. He argues that his loss amount should be limited to the approximately $32,000 from fees he charged other inmates for preparing fraudulent returns and from the refund checks deposited into his bank account and should not include the amounts deposited into his co-conspirators' accounts.

The United States Sentencing Guidelines provide for increases in offense level for fraud conspiracies where the loss amount exceeds $6,500. U.S.S.G. § 2B1.1(b)(1). The loss amount is considered the "greater of actual loss or intended loss." § 2B1.1, cmt. n.3(A). The loss calculation is based on the scope of the "relevant conduct," which includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." §§ 1B1.3(a)(1)(A)-(B). It also includes conduct within the scope of the jointly undertaken criminal activity, taken in furtherance of the activity, and in connection with that activity so long as it was reasonably foreseeable. §§ 1B1.3(a)(1)(B). Where offenses require grouping of multiple counts, the Guidelines provide that the "relevant conduct" additionally comprises "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]" § 1B1.3(a)(2).

5

Harris does not contest the mathematical calculation of actual loss or intended loss of the whole conspiracy, but makes three arguments challenging the District Court's conclusion that the "relevant conduct" to consider for purposes of calculating the loss amount included the criminal actions of Johnson, Nalls, Naylor, and Gossett between September 2009 and December 2012, and Harris's post-indictment conduct in 2015. First, Harris argues that his actions were insufficient for the District Court to have determined that he "aided, abetted and induced" the criminal conduct of his co-conspirators and that their actions could constitute "jointly undertaken criminal activity." Unfortunately for Harris, he conceded that he taught Nalls, Johnson, and other inmates how to complete fraudulent tax returns. This evidence, cited by the District Court in its findings as to sentencing matters, demonstrates Harris's "affirmative participation which at least encourage[d] the perpetrator." *United States v. Graham*, 758 F.2d 879, 885 (3d Cir. 1985) (describing the standard for establishing aiding and abetting in the filing of false tax returns) (citations omitted).

But there was more. Harris and Nalls worked together, with Harris preparing the returns and Nalls obtaining identities from individuals outside of prison to use as dependents on tax returns. Harris contacted Naylor, through Nalls, for the purpose of having Naylor cash refund checks. Harris admitted to using Naylor's address and bank accounts to receive and deposit refund checks. Naylor introduced Harris to Gossett, whom Harris continued to rely upon to deposit checks. Harris also admitted to giving

6

Johnson tax advice and introducing him to Naylor, who could deposit Johnson's refund checks.

Second, he argues that the District Court erred in finding that his conduct was "jointly undertaken" with his co-conspirators. Determining whether a defendant's actions were "jointly undertaken" under the Guidelines requires a "searching and individualized inquiry into the circumstances surrounding each defendant's involvement in the conspiracy." *United States v. Collado*, 975 F.2d 985, 995 (3d Cir. 1992). Merely finding a defendant's contributions to the scheme to be "substantial" is not enough for the defendant's actions to be considered "jointly taken," but the individualized assessment requirement does not mean, as Harris contends, that the Guidelines necessitate a finding that Harris and each of his co-conspirators were personally involved in every aspect of the conspiracy. It is sufficient that Harris taught Nalls, Johnson, and other inmates how to file the false returns and worked with Naylor and Gossett to cash the checks for it to be reasonably foreseeable by Harris that Nalls, Johnson, Naylor, and Gossett would file false returns and deposit fraudulent refund checks into their accounts. *See id*.; *see also United States v. Pizarro-Berrios*, 448 F.3d 1, 9–10 (1st Cir. 2006) (finding the loss amount in a bank fraud scheme foreseeable to the defendant who was involved with the scheme from the beginning, knew the leaders of the scheme, and knew the details of the scheme). Based on this evidence, the District Court did not err in determining that Harris aided and

7

abetted his co-conspirators and that Harris and his co-conspirators' conduct fell within the parameters of the "jointly undertaken" prong.

Finally, Harris contends that the District Court should not have considered his 2015 conduct as part of the same course of conduct or common scheme or plan as the offense of conviction. Again, the evidence contradicts his argument.

The Guidelines define "common scheme or plan" as two or more offenses that are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3, cmt. n.5(B)(i). Harris's 2015 actions, which include the deposit of a fraudulent tax refund check and numerous calls recruiting new co-conspirators all after entering a guilty plea, plainly qualify under this definition.

Harris briefly points out the fraudulent refund derived from his own tax return and concludes that it should not count as evidence towards a common scheme. But this argument does not change the fact that these were the same tactics Harris had previously used to falsify tax returns, the United States remained the victim of Harris's conduct, and the false return had the same intended purpose. Accordingly, the District Court properly found Harris's 2015 conduct to be part of the same course of conduct or common scheme or plan such that it should be considered "relevant conduct" in determining the loss

8

amount.[1]  The evidence clearly supports the District Court's decision to attribute the conspiracy's over $250,000 of intended losses to Harris.  Accordingly, the District Court properly increased Harris's offense level by twelve pursuant to Section 2B1.1(b)(1)(G) of the Guidelines.

### B.  Leadership Role

Next, Harris asserts the District Court erred by imposing the four-point enhancement for a leadership role in the conspiracy.

Section 3B1.1(a) of the Guidelines allows for a four-level increase for a defendant who was an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  In determining whether the defendant was an organizer or leader, the Guidelines counsel a district court to consider "the exercise of decision making authority" and degree of control over other co-conspirators, "the degree of participation in planning or organizing the offense," including the recruitment of accomplices, any claims to larger shares of the profits from the crime, and generally the

---

[1] While Harris does not appear to challenge the calculation of the loss amount, it is also clear that the Government presented sufficient evidence that the intended loss amounts attributable to Harris, Johnson, Nalls, Naylor, and Gossett between September 2009 and December 2012 and to Harris in 2015 exceeded $250,000.  *United States v. Fountain*, 792 F.3d 310, 322 (3d Cir. 2015) (noting that "a sentencing court need only make a 'reasonable estimate' of loss that is based on the available evidence in the record" (citation omitted)).

nature and scope of the defendant's participation in the conspiracy. U.S.S.G. § 3B1.1, cmt. n.4. The sentencing court need not make a finding on every factor for a defendant to be found an organizer or leader of the criminal activity. *See United States v. Ortiz*, 878 F.2d 125, 127 (3d Cir. 1989). Nor must the court find the defendant played a direct role in every aspect of the conspiracy in order to consider the defendant an organizer or leader. *See United States v. Bass*, 54 F.3d 125, 129 (3d Cir. 1995) ("A person who plans, funds and supervises a conspiracy's operation does not immunize himself from upward adjustment under § 3B1.1 just because he does not join in all of the mechanics and all of the various activities of the illegal enterprise.").

Without citing to the record, Harris asserts that he did not have decision-making authority and the extent of his participation was limited to answering questions and instructing others in tax return preparation. But the evidence presented at trial belies this assertion. By Harris's own admission, he instructed other inmates on falsifying tax returns. He recruited Naylor into the scheme to open bank accounts and deposit refund checks. There was evidence that Harris also recruited others to open bank accounts and find information for other individuals to falsify on the tax returns. This evidence points to Harris's outsized role in the conspiracy and supports the District Court's decision to assess the four-level enhancement. There is no clear error here.

## C. Acceptance of Responsibility

10

Finally, Harris challenges the District Court's decision to deny a three-level reduction for acceptance of responsibility. The Guidelines provide that a defendant may receive a two-level reduction if the defendant "clearly" demonstrates acceptance of responsibility. U.S.S.G. § 3E1.1(a).[2] This Court has repeatedly found that continued criminal activity after an indictment is inconsistent with an acceptance of responsibility. *See United States v. Ceccarani*, 98 F.3d 126, 130 (3d Cir. 1996).

In addition to the tax refund deposit based on his false tax return described above, the Government presented evidence of intercepted calls in 2015, after Harris had pleaded guilty, in which Harris was implicated in the filing of fraudulent returns on behalf of another individual, Keontae Spears. In other intercepted calls in 2015, Harris advised contacts outside the prison to find dependents to list to inflate the tax credits on tax returns. Nevertheless, Harris argues that the 2015 phone calls were not related to the tax fraud scheme and that the District Court interpreted the calls incorrectly.

Although he appears to challenge a factual interpretation, he also advocates for plenary review. Since the District Court's decision did not rest on an interpretation of the Guidelines, Harris is not entitled to plenary review. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (reserving plenary review of a district court's interpretation of the

---

[2] A defendant may qualify for an additional one-level reduction under U.S.S.G. § 3E1.1(b) if the government moves for the reduction. Harris does not qualify for the additional one-level decrease because the Government did not so move. Therefore, the maximum possible reduction for acceptance of responsibility in this case is two levels.

Guidelines). As such, we review the Court's factual conclusions for clear error. In doing so, we find the District Court properly considered the evidence and we find no error in the Court's conclusion that the "the Defendant [was] plainly marching forward in leading others through the twists and turns of preparing fraudulent federal tax returns using phony ID information" on the 2015 post-plea phone calls.

We shall affirm the District Court's finding that Harris had not sufficiently accepted responsibility to qualify for the downward adjustment.

## IV. CONCLUSION

We find that the District Court did not commit clear error in applying offense-level increases based on the loss amount and leadership role. Nor did it commit clear error by denying an offense level reduction for acceptance of responsibility in sentencing Appellant Reginald Harris. Therefore, we will affirm the District Court's judgment of conviction.